1

2

3

4

5

6

7

8        IN THE UNITED STATES DISTRICT COURT

9        FOR THE EASTERN DISTRICT OF CALIFORNIA

10   LEANNIA COWEN,

11            Plaintiff,                    No. CIV S-07-1138 KJM

12        vs.

13
     MICHAEL J. ASTRUE,
14   Commissioner of Social Security,

15            Defendant.              ORDER
     _____/
16

17            Plaintiff seeks judicial review of a final decision of the Commissioner of Social

18   Security ("Commissioner") denying applications for Disability Income Benefits ("DIB") and

19   Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act

20   ("Act"), respectively.  For the reasons discussed below, the court will deny plaintiff's motion for

21   summary judgment or remand and grant the Commissioner's cross-motion for summary

22   judgment.

23   /////

24   /////

25   /////

26   /////

I.  Factual and Procedural Background

        In a decision dated March 1, 2007, the ALJ determined plaintiff was not disabled.[1]
The ALJ's decision became the final decision of the Commissioner when the Appeals Council
denied plaintiff's request for review.  The ALJ found plaintiff has severe impairments of history
of hypothyroidism, osteoporosis, major depression, moderate, without psychotic features,
borderline intellectual functioning, and polysubstance dependence, reportedly in remission but
these impairments do not meet or medically equal a listed impairment; plaintiff is not fully
credible; plaintiff has the residual functional capacity to perform medium work, limited to
unskilled, simple routine tasks without frequent public contact; plaintiff cannot perform her past

---

        [1] Disability Insurance Benefits are paid to disabled persons who have contributed to the
Social Security program, 42 U.S.C. § 401 et seq.  Supplemental Security Income ("SSI") is paid
to disabled persons with low income. 42 U.S.C. § 1382 et seq.  Under both provisions, disability
is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a
medically determinable physical or mental impairment."  42 U.S.C. §§ 423(d)(1)(a) &
1382c(a)(3)(A).  A five-step sequential evaluation governs eligibility for benefits.  See 20 C.F.R.
§§ 423(d)(1)(a), 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).  The
following summarizes the sequential evaluation:

        Step one:  Is the claimant engaging in substantial gainful
        activity?  If so, the claimant is found not disabled.  If not, proceed
        to step two.
        Step two:  Does the claimant have a "severe" impairment?
        If so, proceed to step three.  If not, then a finding of not disabled is
        appropriate.
        Step three:  Does the claimant's impairment or combination
        of impairments meet or equal an impairment listed in 20 C.F.R., Pt.
        404, Subpt. P, App.1?  If so, the claimant is automatically
        determined disabled.  If not, proceed to step four.
        Step four:  Is the claimant capable of performing his past
        work?  If so, the claimant is not disabled.  If not, proceed to step
        five.
        Step five:  Does the claimant have the residual functional
        capacity to perform any other work?  If so, the claimant is not
        disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

        The claimant bears the burden of proof in the first four steps of the sequential evaluation
process.  Bowen, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential
evaluation process proceeds to step five.  Id.

relevant work as a nurse's aide; and based on Medical-Vocational Rule 203.26, plaintiff is not disabled.  Administrative Transcript ("AT") 22-23.  Plaintiff contends the ALJ committed error at step three of the sequential analysis, improperly discredited plaintiff's testimony, and should have obtained the testimony of a vocational expert and medical expert.

II.  Standard of Review

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards under 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it.  Copeland v. Bowen, 861 F.2d 536, 538 (9th Cir. 1988) (citing Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573, 575-76 (9th Cir. 1988)).  Substantial evidence means more than a mere scintilla of evidence, but less than a preponderance.  Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996) (citing Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975)).  "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 402, 91 S. Ct. 1420 (1971) (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229, 59 S. Ct. 206 (1938)).  The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed.  See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence.  Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

/////

/////

3

III.  Analysis

    A.  Step Three Analysis

        Plaintiff contends the ALJ improperly analyzed whether plaintiff met or equaled Listing 12.04.  The Social Security Regulations "Listing of Impairments" is comprised of impairments to certain specified categories of body systems that are severe enough to preclude a person from performing gainful activity.  Young v. Sullivan, 911 F.2d 180, 183-84 (9th Cir. 1990); 20 C.F.R. § 404.1520(d).  Conditions described in the listings are considered so severe that they are irrebuttably presumed disabling.  20 C.F.R. § 404.1520(d).  In meeting or equaling a listing, all the requirements of that listing must be met.  Key v. Heckler, 754 F.2d 1545, 1550 (9th Cir. 1985).

        To meet a listed impairment, a claimant must establish that she meets each characteristic of a listed impairment relevant to her claim.  To equal a listed impairment, a claimant must establish symptoms, signs and laboratory findings "at least equal in severity and duration" to the characteristics of a relevant listed impairment, or, if a claimant's impairment is not listed, then to the listed impairment "most like" the claimant's impairment.  20 C.F.R. § 404.1526.  A finding of equivalence must be based on medical evidence only.  20 C.F.R. § 404.1529(d)(3).  A generalized assertion of functional problems is not enough to establish disability at step three.  Tackett v. Apfel, 180 F.3d 1094, 1100 (9th Cir. 1999).

        Mental disorders are considered in Part 12 of the Listings.  Listing 12.04 addresses affective disorders.  The Listing is comprised of two parts, labeled  "A" and "B".  Both parts of the listing must be met or equaled.[2]  The Part A criteria determine whether evidence of a depressive disorder is present.  20 C.F.R. Part 404, Subpt.  P, App. 12.04(A).  The Part B criteria evaluate the functional loss resulting from a depressive disorder.  See, e.g., Cruse v. U.S. Dept. of Health & Human Services, 49 F.3d 614, 616 (10th Cir. 1995).  The ALJ found plaintiff did not

---

    [2]  Alternatively, the requirements of Part C may be satisfied.  Part C is inapplicable in the circumstances of this case.

meet or equal the "B"criteria.  AT 15.  Part B of Listing 12.04 requires at least two of the

following functional limitations:

           1.  marked restriction of activities of daily living;

           2.  marked difficulties in maintaining social functioning;

           3.  marked difficulties in maintaining concentration, persistence or

           pace; or

           4. repeated episodes of decompensation, each of extended duration.

"Marked" means "more than moderate, but less than extreme."  See Listing 12.00(C).

        The ALJ found plaintiff did not meet or equal Listing 12.04 because there was no

evidence of marked limitations in daily living, social functioning, or ability to concentrate

sufficiently to complete work tasks.  AT 15.  In reaching this finding, the ALJ relied on the

assessments of psychiatric evaluator Dr. Canty and consulting psychologist Dr. Schmidt.  AT 15-

17, 228-231, 262-268.  The ALJ's Part B finding also is supported by the assessment of the

nonexamining state agency physician, who indicated only slight to moderate limitations in

nonexertional functioning.  AT 248-249.  The ALJ also properly noted that although plaintiff was

put on a 5150 hold for suicidal thoughts in July 2006, by October 2006, plaintiff reported she was

doing well on antidepressant medication and had no suicidal thoughts.  AT 18, 323, 328, 339-

340.

        Plaintiff's reliance on the GAF[3] of 55 to 60 assessed by Dr. Schmidt is misplaced.

The GAF does not correlate to the severity assessments utilized in Social Security disability

---

[3] GAF is a scale reflecting the "psychological, social, and occupational functioning on a
hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual of Mental
Disorders at 34 (4th ed. 2000) ("DSM IV-TR"). A GAF of 51-60 indicates moderate symptoms
(e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in
social, occupational, or school function (e.g., few friends, conflicts with peers or co-workers). Id.

1  determinations.[4]  Moreover, the assessed GAF indicates only moderate symptoms, which do not

2  rise to the level required under Part B of Listing 12.04.  In addition, the ALJ's residual functional

3  capacity finding is fully consistent with the limitations assessed by Dr. Schmidt.  AT 23, 267.

4  There was no error in the step three analysis.

5      B.  Credibility

6         Plaintiff also contends the ALJ improperly discredited her testimony.  The ALJ

7  determines whether a disability applicant is credible, and the court defers to the ALJ's discretion

8  if the ALJ used the proper process and provided proper reasons.  See, e.g., Saelee v. Chater, 94

9  F.3d 520, 522 (9th Cir. 1995).  If credibility is critical, the ALJ must make an explicit credibility

10  finding.  Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990); Rashad v. Sullivan, 903 F.2d

11  1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be supported by "a specific,

12  cogent reason for the disbelief").

13         In evaluating whether subjective complaints are credible, the ALJ should first

14  consider objective medical evidence and then consider other factors.  Bunnell v. Sullivan, 947

15  F.2d 341, 344 (9th Cir. 1991) (en banc).  If there is objective medical evidence of an impairment,

16  the ALJ then may consider the nature of the symptoms alleged, including aggravating factors,

17  medication, treatment and functional restrictions.  See id. at 345-47.  The ALJ also may consider:

18

19      [4] 65 Fed. Reg. 50746, 50764-65 (Aug. 21, 2000) provides in pertinent part:

20      Comment: Two commenters recommended that we discuss the Global Assessment of Functioning (GAF) Scale in the introductory paragraphs of final 12.00D.  They noted that we referred to the GAF scale in the preamble to the NPRM (56 FR at 33132) and seemed to encourage its use, but then failed to mention it in the proposed rules.

21      Response: We did not adopt the comment.  We did not mention the GAF scale to

22  endorse its use in the Social Security and SSI disability programs, but to indicate why the third sentence of the second paragraph of proposed 12.00D stated that an individual's medical source

23  "normally can provide valuable additional functional information."  To assess current treatment needs and provide a prognosis, medical sources routinely observe and make judgments about an

24  individual's functional abilities and limitations.  The GAF scale, which is described in the DSM-III-R (and the DSM-IV), is the scale used in the multiaxial evaluation system endorsed by

25  the American Psychiatric Association.  It does not have a direct correlation to the severity requirements in our mental disorders listings.

26

1  (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent

2  testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a

3  prescribed course of treatment, and (3) the applicant's daily activities.  Smolen v. Chater, 80 F.3d

4  1273, 1284 (9th Cir. 1996); see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR

5  55406-01; SSR 88-13.  Work records, physician and third party testimony about nature, severity

6  and effect of symptoms, and inconsistencies between testimony and conduct also may be

7  relevant.  Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997).  The ALJ

8  may validly consider a failure to seek treatment for an allegedly debilitating medical problem in

9  determining whether the alleged associated pain is not a significant nonexertional impairment.

10  See Flaten v. Secretary of HHS, 44 F.3d 1453, 1464 (9th Cir. 1995).  The ALJ may rely, in part,

11  on his or her own observations, see Quang Van Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir.

12  1989), which cannot substitute for medical diagnosis.  Marcia v. Sullivan, 900 F.2d 172, 177 n.6

13  (9th Cir. 1990).  "Without affirmative evidence showing that the claimant is malingering, the

14  Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing."

15  Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

16         Plaintiff testified that she was extremely limited in her ability to perform any

17  kinds of activity.  AT  498-501.  In assessing plaintiff's credibility, the ALJ considered plaintiff's

18  activities of daily living, as self-reported to the examining physicians and psychiatrists.  These

19  activities included light housework chores, some grocery shopping, spending time on the

20  computer, visiting her sister, and working out in the gym with her mother three to four times per

21  week.  AT 20, 229, 255, 264.  The ALJ discounted third party reports that indicated plaintiff's

22  activities were more recently limited because the medical record did not indicate any kind of

23  worsening condition that would support such increased limitations.  AT 20, 129-138.  The ALJ

24  also considered plaintiff's conservative medical and psychological treatment as well as plaintiff's

25  cessation of prescribed regimens without input from the prescribing physician.  AT 20, 287, 330.

26  The ALJ also factored into the credibility analysis plaintiff's inconsistent statements regarding

the use of illegal drugs.  AT 20, 263, 339-340, 504-505.  The factors considered by the ALJ were all valid and supported by the record.  The ALJ's credibility determination was based on permissible grounds and will not be disturbed.

C.  Expert Testimony

Plaintiff further asserts the ALJ committed error by failing to obtain medical or vocational expert testimony.  The court discerns no medical conditions in the record that are so out of the ordinary that the testimony of a medical consultant would have been necessary.  Plaintiff's contention that vocational expert testimony was required is also unsupported by the record.

In finding plaintiff was not disabled, the ALJ relied on Medical-Vocational Rule 203.26.  The Medical-Vocational Guidelines ("the grids") are in table form.  The tables present various combinations of factors the ALJ must consider in determining whether other work is available.  See generally Desrosiers, 846 F.2d at 577-78 (Pregerson, J., concurring). The factors include residual functional capacity, age, education, and work experience.  For each combination, the grids direct a finding of either "disabled" or "not disabled."  The rule relied on by the ALJ accurately describes plaintiff's vocational factors.

There are limits on using the grids, an administrative tool to resolve individual claims that fall into standardized patterns:  "[T]he ALJ may apply [the grids] in lieu of taking the testimony of a vocational expert only when the grids accurately and completely describe the claimant's abilities and limitations."  Jones v. Heckler, 760 F.2d 993, 998 (9th Cir. 1985); see also Heckler v. Campbell, 461 U.S. 458, 462 n.5, 103 S. Ct. 1952, 1955 n.5 (1983).  The ALJ may rely on the grids, however, even when a claimant has combined exertional and nonexertional limitations, if nonexertional limitations are not so significant as to impact the claimant's

8

1   exertional capabilities.[5]  Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990), overruled on

2   other grounds, Bunnell v. Sullivan, 947 F.2d 341 (9th Cir. 1991) (en banc); Polny v. Bowen, 864

3   F.2d 661, 663-64 (9th Cir. 1988); see also Odle v. Heckler, 707 F.2d 439 (9th Cir. 1983)

4   (requiring significant limitation on exertional capabilities in order to depart from the grids).

5           The ALJ specifically found that the occupational base was not significantly eroded

6   by plaintiff's nonexertional limitations.  AT 22.  The ALJ relied on Social Security Ruling[6]

7   85-15, which notes that unskilled jobs ordinarily involve dealing primarily with objects, not

8   people.  AT 21-22.  That ruling also notes there are over 2,500 unskilled jobs that can be

9   performed at the medium, light and sedentary exertion levels.  SSR 85-15.  The regulations

10  provide that the primary work functions in the bulk of unskilled work relate to working with

11  things, rather than people.  See 20 C.F.R. Pt 404. Subpt P. App. 2, § 201.00(h)(4)(I) (addressing

12  sedentary work); see also 20 C.F.R. Pt 404. Subpt. P. App. 2, § 202.00(g) (addressing light work);

13  20 C.F.R. Pt 404. Subpt. P. App. 2, § 203.00 (ability to perform medium work includes the ability

14  to perform sedentary and light work).  Given plaintiff's residual functional capacity to

15  /////

16  /////

17  

18      [5]  Exertional capabilities are the "primary strength activities" of sitting, standing, walking,
    lifting, carrying, pushing, or pulling.  20 C.F.R. § 416.969a (b) (2003); SSR 83-10, Glossary;
19  compare Cooper v. Sullivan, 880 F.2d 1152, 1155 n. 6 (9th Cir.1989).
            Non-exertional activities include mental, sensory, postural, manipulative and
20  environmental matters that do not directly affect the primary strength activities. 20 C.F.R. §
    416.969a (c) (2003); SSR 83-10, Glossary; Cooper, 880 F.2d at 1155 & n. 7 (citing 20 C.F.R. pt.
21  404, subpt. P, app. 2, § 200.00(e)).  "If a claimant has an impairment that limits his or her ability
    to work without directly affecting his or her strength, the claimant is said to have nonexertional
22  (not strength-related) limitations that are not covered by the grids."  Penny v. Sullivan, 2 F.3d
    953, 958 (9th Cir. 1993) (citing 20 C.F.R., pt. 404, subpt. P, app. 2 § 200.00(d), (e)).
23  
        [6]  Social Security Rulings "represent precedent final opinions and orders and statements
24  of policy and interpretations that we have adopted."  20 C.F.R. § 402.35(b)(1).  Social Security
    Rulings are "binding on all components of the Social Security Administration."  Heckler v.
25  Edwards, 465 U.S. 870, 873 n.3 (1984); cf.  Silveira v. Apfel, 204 F.3d 1257, 1260 (9th Cir.
    2000) ("This court defer[s] to Social Security Rulings ... unless they are plainly erroneous or
26  inconsistent with the Act or regulations").

1 | perform medium work, a finding supported by the record, the ALJ did not err in relying on the
2 | grids.  AT 260, 272, 283-287, 289, 291, 293, 299, 303, 305-308, 312-313, 316-318, 325-333,
3 | 337.
4 |      The ALJ's decision is fully supported by substantial evidence in the record and
5 | based on the proper legal standards.  Accordingly, IT IS HEREBY ORDERED that:
6 |      1.  Plaintiff's motion for summary judgment or remand is denied, and
7 |      2.  The Commissioner's cross-motion for summary judgment is granted.
8 | DATED:  September 30, 2008.

_____
U.S. MAGISTRATE JUDGE

006
cowen.ss